IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES CLEMENS** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **C.A. No. 05-325 Erie** |
| ) | **District Judge McLaughlin** |
| **SCI-ALBION, et al.,** ) | **Magistrate Judge Baxter** |
| **Defendants.** ) | |

**MAGISTRATE JUDGE'S**

**REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendant Baker [Document # 17] be granted and the motion to dismiss or for summary judgment filed by the Commonwealth Defendants [Document # 22] be granted.

**II.   REPORT**

   **A.   Relevant Procedural and Factual History**

On October 31, 2005, Plaintiff, represented by counsel, filed this civil rights action. On the date of filing, Plaintiff was a former inmate incarcerated within the State Correctional System and had been released on parole to Renewal, Inc. Shortly after the filing of the lawsuit, Plaintiff was returned to the State Correctional System as a parole violator and remains incarcerated there to date. Named as Defendants are: SCI-Albion, SCI-Albion Medical Unit, "Bureau of Corrections," Commonwealth of Pennsylvania, William Wolfe, Victoria Kormanic, William Barr, John Skindell and Carla Webb (hereafter, "Commonwealth Defendants"), all represented by the Attorney General's office, and Dr. Mark Baker, represented privately.

Plaintiff alleges that in October of 2003, the Commonwealth Defendants failed to protect him from assault by another inmate while he was in their custody and that following the assault

he was not provided with adequate medical care.

On May 1, 2006, Defendant Baker filed a motion to dismiss, and on May 24, 2006, the Commonwealth Defendants filed a motion to dismiss or for summary judgment. Thereafter, Plaintiff filed "Answers" to the pending motions, and the Commonwealth Defendants and Defendant Baker filed reply briefs.

On November 8, 2006, this Court heard oral argument on the limited issue of the applicability of the exhaustion requirement of the Prison Litigation Reform Act. Following the hearing, the parties were permitted to supplement their pleadings. See Documents # 35, 36, and 37.

### B.     Standards of Review
#### 1.     Motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974). However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997). Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth

sufficient information to suggest that there is some recognized legal theory upon which relief can be granted.  See Swierkiewicz.

### 2. Motion for summary judgment

The parties have submitted evidence in support of their motions to dismiss.  Therefore, this Court will convert the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) March 10, 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v.

3

Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

      The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

      A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

    **C.**    **The Prison Litigation Reform Act**

        **1.**    **The Exhaustion Requirement**

      The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... *by a prisoner confined in any* jail, prison, or *other correctional facility* until such administrative remedies as are available are exhausted.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[1] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion").

According to a recent decision by the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, ___ U.S. ___, ___, 126 S.Ct. 2378, 2386 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 2382.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting

---

[1] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

the defense to plead and prove it. Id.[2]

### 2. The Procedural Default Component of the Exhaustion Requirement

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[3] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

### 3. The Administrative Process Available to State Inmates

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit

---

[2] Defendant Baker mis-characterizes this burden as being Plaintiff's. However, the case law within this Circuit is clear and unequivocal that the burden of proving the lack of exhaustion lies with defendants. Ray v. Kertes, 285 F.3d at 295 ("We thus join the many other circuits that have held that failure to exhaust is an affirmative defense to be pleaded by the defendant.").

[3] There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

(within fifteen working days of the alleged event) a written grievance for review by the facility manager or the regional grievance coordinator, who responds in writing.  Second, the inmate must timely submit a written appeal to intermediate review, and again he inmate receives a written response.  Finally, the inmate must submit a timely appeal to the Central Office Review Committee, and the inmate will receive a final determination in writing.  See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 4. Applicability of the PLRA

All Defendants argue that Plaintiff has failed to exhaust his administrative remedies and the complaint should therefore be dismissed under the PLRA.[4]  In Opposition, Plaintiff argues that the PLRA is inapplicable to this case because he was not a "prisoner" on the date of the filing of the complaint.  See Ahmed v. Dragovich, 297 F.3d 201, 210 n.10 (3d Cir. 2002) ("[E]very court of appeals to have considered the issue has held that the PLRA does not apply to actions filed by former prisoners.").

The central inquiry here is whether the Prison Litigation Reform Act is applicable to this case - to wit, whether Plaintiff Clemens was a "prisoner confined in a jail, prison, or other correctional facility" on the date of the filing of the complaint thereby making him subject to the exhaustion requirements of the PLRA.  "It is the plaintiff's status at the time he files suit that determines whether § 1997e(a)'s exhaustion provision applies." Norton v. City Of Marietta, 432 F.3d 1145, 1150, (10th Cir. 2005) (citing Nerness v. Johnson, 401 F.3d 874, 876 (8th Cir. 2005); Witzke v. Femal, 376 F.3d 744, 750 (7th Cir. 2004); Cox v. Mayer, 332 F.3d 422, 424-25 (6th Cir. 2003); Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002); Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000); Greig v. Goord, 169 F.3d 165, 167 (2d Cir.1999)).

---

[4] The evidentiary record before this Court is clear that Plaintiff did not make any attempt to utilize the administrative remedies process while he was incarcerated at SCI-Albion. See Document # 35, Exhibit 1, Declaration of Tracy Pollack, Administrative Officer in the Grievance Review Office, ¶ 9.

7

In order to make this determination, this Court must look to the statute to determine whether Plaintiff meets the statutory definition of "prisoner" on the day this lawsuit was filed. "Our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." BedRoc Ltd., LLC v. U.S., 541 U.S. 176, 183 (2004) (internal citations omitted).[5]

The statute defines the term prisoner as "any person incarcerated or *detained in any facility* who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h)(emphasis added). Other courts have held that parolees and probationers can be "prisoners" within this statutory definition [Ruggiero v. County of Orange, 386 F.Supp.2d 434, 436 (S.D.N.Y. 2005)("[I]t is clear that a person may be held as a prisoner at a drug treatment campus. Such a facility may not be deemed to be a correctional facility, but that does not preclude a person held at the drug treatment campus from being labeled as a prisoner.") and Witzke v. Femal, 376 F.3d 744 (7th Cir. 2004)] and this Court concludes likewise.

On the date of the filing of this lawsuit, Plaintiff had been recently paroled from the State Correctional Institution at Albion to Renewal, Inc. (and less than two weeks later was returned to prison as a parole violator). See Document # 35, Declaration of Kim McGinnis, ¶¶ 3 and 4. Renewal, Inc. characterizes itself as both a "residential community corrections program"

---

   [5] Indeed, "the Supreme Court has instructed *ad nauseam*: '[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others,' which is 'that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.' Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The Court has made clear that '[w]hen the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete. Id. at 254, 112 S.Ct. 1146. See also United States v. Gonzales, 520 U.S. 1, 6, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)( "Given the straightforward statutory command, there is no reason to resort to legislative history."); Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)("[W]e do not resort to legislative history to cloud a statutory text that is clear."); Barnhill v. Johnson, 503 U.S. 393, 401, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992)("To begin, we note that appeals to statutory history are well taken only to resolve statutory ambiguity.")." Cox v. Mayer, 332 F.3d 422, 426 (6th Cir. 2003).

and a "minimum security work release facility."  Document # 35, Exhibit 4, Resident Guidebook , pages 1, 32.  While at Renewal, Plaintiff's liberty was restricted in numerous ways. Plaintiff was required to be present within the building at all times and could only leave with the express permission of his case manager.  Document # 35, Exhibit 3, Declaration of Doug Williams, CEO of Renewal, Inc.  As a resident of Renewal, Plaintiff was subjected to a nightly curfew and to the verification of his whereabouts both inside and outside of the building. Document # 35, Exhibit 4, page 19.  Leaving the facility without prior permission could lead to disciplinary sanctions including remand to a correctional facility.  Additionally, as a resident of Renewal, Plaintiff was subjected to random urinalysis [id. at 27] and limited to one hour visitation per week [id. at 29].  Plaintiff has not refuted **any** of this documentary evidence and in the face of a motion for summary judgment, it is his burden to do so.  Based on the foregoing[6], this Court concludes that at the time of the filing of this action, Plaintiff was a "prisoner" detained at an "other correctional facility" thereby subjecting him to the requirements of the PLRA.

      Instead of refuting Defendants' evidence supporting a finding that Plaintiff was a "prisoner" on the date of the filing of this lawsuit, Plaintiff maintains that Defendants should be estopped from asserting the defense of failure to exhaust.  Plaintiff attempts to convince this Court that because he was in a restricted housing unit immediately following the assault in 2003 and because his writing hand was severely injured at that time, Defendants should be estopped from moving for dismissal on the grounds of failure to exhaust administrative remedies. Plaintiff's argument for the application of estoppel and/or waiver principles in this regard is unavailing within this Circuit.  See Hill v. Smith, 186 Fed.Appx. 271, 2006 WL 1674153, at *2 (3d Cir. June 19, 2006) ("While at least two Circuits have held that the PLRA's exhaustion requirement is an affirmative defense which is subject to the doctrines of estoppel and waiver, see, e.g., Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir.2004) (per curiam) (equitable estoppel is

---

   [6] This Court also notes that as a matter of state law, a parolee remains in the legal custody and control of the Commonwealth until the expiration of the maximum sentence. Martin v. Pennsylvania Board of Probation and Parole, 576 Pa. 588, 840 A.2d 290, 293 (2003).

possible if defendants' actions prevented plaintiff from exhausting); Wendell v. Asher, 162 F.3d 887, 890 (5th Cir.1998), **we have not yet so held**.").

The only possible review available within this Circuit revolves around the question of whether the administrative remedy process was *available*[7] to Plaintiff. This Court takes judicial notice of Department of Corrections' policy ADM 804 regarding the Inmate Grievance System with which this Court has extensive experience. The administrative remedy process is available to inmates within the restricted housing units and it is available to inmates who have been seriously injured. Additionally, the Inmate Grievance System allows for excusable delays in filing deadlines.

Here, Plaintiff was incarcerated at SCI-Albion until September 16, 2005, almost two years after the incident at issue in this lawsuit. Document # 35, Exhibit 2, Declaration of Kim McGinnis, ¶ 3. Plaintiff did not start the administrative remedy process in a timely manner by the filing of the initial written grievance within fifteen days of the incident. But, more importantly in this case, Plaintiff did not make any untimely attempt thereafter. See Document # 35, Exhibit 1, Declaration of Tracy Pollack, Administrative Officer in the Grievance Review Office, ¶ 9. The administrative remedies process was always available to Plaintiff, he simply chose not to utilize it.

Accordingly, summary judgment should be granted in favor of Defendants as Plaintiff has not exhausted his administrative remedies pursuant to the requirements of the PLRA.

### III.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss filed by Defendant Baker [Document # 17] be granted and the motion to dismiss or for summary judgment filed by the Commonwealth Defendants [Document # 22] be granted.

---

[7] "No action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available* are exhausted."  42 U.S.C. § 1997e(a).

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

<u>Susan Paradise Baxter</u>  
SUSAN PARADISE BAXTER  
Chief United States Magistrate Judge

Dated: November 29, 2006